IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:19CR18-HEH |
| | ) |
| LUIS PEDRO FUENTES-AMAYA, | ) |
|     a/k/a "Marlboro," | ) |
|     a/k/a "Malboro," | ) |
|     a/k/a "CJ," | ) |
| | ) |
| *Defendant.* | ) |

## STATEMENT OF FACTS

The United States and the defendant, LUIS PEDRO FUENTES-AMAYA ("FUENTES-AMAYA"), agree that had the case gone to trial the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. From in or about February 1, 2014, and continuing through at least in or about 2016, the exact dates being unknown, in Costa Rica, Guatemala, Mexico, and elsewhere, and in an offense begun and committed outside the territorial jurisdiction of the United States, the defendant, FUENTES-AMAYA, whose point of entry into the United States was in the Eastern District of Virginia, and others, known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to commit the following offense against the United States: to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 963.

2. Starting on or about 2014, FUENTES-AMAYA began working with a drug trafficking organization ("DTO") led by Co-Conspirator #1 to assist in the purchase and transportation of cocaine from Central America to the United States. In working with this DTO, FUENTES-AMAYA organized and coordinated the transportation of cocaine and money from various countries in Central America. In addition, FUENTES-AMAYA brokered cocaine purchases between sources of supply and the DTO. It was reasonably foreseeable to FUENTES-AMAYA that during the course of the conspiracy, he and other members of the DTO brokered and organized the transportation of 2,000 kilograms of cocaine for ultimate importation into the United States.

3. It was part of the conspiracy that FUENTES-AMAYA agreed with Co-Conspirator #1 to broker cocaine purchases for the DTO. In this role, FUENTES-AMAYA would actively seek out cocaine for sale by sources of supply. Upon finding suitable sources of supply, FUENTES-AMAYA would seek to arrange transactions between the sources of supply and the DTO. FUENTES-AMAYA communicated with Co-Conspirator #1 and other members of the DTO, about cocaine for sale and attempted to arrange cocaine deals. In exchange for his brokerage services, Co-Conspirator #1 authorized the payment of a commission to FUENTES-AMAYA on every kilogram of cocaine the DTO purchased.

4. In approximately 2015, FUENTES-AMAYA coordinated the transportation of 300 kilograms of cocaine from a Central American Source to the DTO. FUENTES-AMAYA arranged for the ground transportation of the cocaine from Nicaragua to Guatemala. In exchange for his help with coordinating and providing ground transportation, the DTO paid FUENTES-AMAYA a commission.

5. It was part of the conspiracy that FUENTES-AMAYA agreed with Co-Conspirator #1 to transport hundreds of kilograms of cocaine across Central America. In this role, FUENTES-AMAYA communicated with Co-Conspirator #1 and other members of the DTO, as to the locations for the cocaine pick-up, the brands of cocaine to be transported, and the amount of cocaine to be transported. In moving the cocaine, FUENTES-AMAYA used ground transportation. FUENTES-AMAYA received payment from the DTO for his transportation services.

6. In 2015 and 2016, FUENTES-AMAYA arranged for the sale and transport of multiple loads of cocaine on behalf of the DTO. On the first load, FUENTES-AMAYA sold 41 kilograms of cocaine to the DTO in Guatemala. As part of this transaction, FUENTES-AMAYA coordinated and delivered the 41 kilograms to the DTO. On the second load, FUENTES-AMAYA sold 43 kilograms of cocaine to the DTO in Guatemala. As part of this transaction, FUENTES-AMAYA coordinated and delivered the 43 kilograms to the DTO. On the third load, FUENTES-AMAYA sold 40 kilograms of cocaine to the DTO in Guatemala. As part of this transaction, FUENTES-AMAYA coordinated and delivered the 40 kilograms to the DTO.

7. It was part of the conspiracy that FUENTES-AMAYA agreed with Co-Conspirator #1 to transport bulk cash drug proceeds across Central America on behalf of the DTO. In this role, FUENTES-AMAYA communicated with Co-Conspirator #1 and other members of the DTO, as to the movement of bulk cash derived from cocaine trafficking. In moving the cash, FUENTES-AMAYA used ground transportation. FUENTES-AMAYA received payment from the DTO for his transportation services.

8.  On a single occasion, in 2015, FUENTES-AMAYA moved $1.5 million of drug proceeds from Guatemala to Costa Rica on behalf of the DTO. In exchange, FUENTES AMAYA received a payment of $150,000.

9.  At all relevant times, FUENTES-AMAYA knew and had reasonable cause to believe that the cocaine distributed as part of this conspiracy would be unlawfully imported into the United States.

10. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger,
United States Attorney

By: _____
Erik S. Siebert
Peter S. Duffey
Heather Mansfield
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, FUENTES-AMAYA and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

November 8/2019
Date

Luis Pedro Fuentes-Amaya
Defendant


I am defendant's attorney Amy Austin. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

11/8/19
Date

Amy Austin, Esquire
Counsel for the defendant

5