IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:19CR18-4-HEH |
| LUIS PEDRO FUENTES-AMAYA, | ) | |
| | ) | |
| a/k/a "Marlboro" | ) | |
| a/k/a "CJ" | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' POSITION ON SENTENCING AND MOTION FOR UPWARD VARIANCE

The United States of America, through its undersigned attorneys, hereby submits its position with respect to sentencing.   The United States concurs with the Probation Officer's determination that the defendant's Total Offense Level is 33 and that his Criminal History Category is I.   *See* PSR, Part D.   The defendant's applicable Guideline range is 135-168 months.   *Id*.   Pursuant to the factors contained in 18 U.S.C. § 3553(a) and for the reasons set forth below, the United States recommends a two-level upward variance, to Total Offense Level 35, Criminal History Category I, with a guideline range of 168-210 months.   Within that guideline, the United States recommends a sentence of 210 months imprisonment.

## I.   Background

Starting on or about 2014, Luis Pedro Fuentes-Amaya ("Fuentes") began working with a drug trafficking organization ("DTO") led by Co-Conspirator #1 to assist in the purchase and transportation of cocaine from Central America to the United States.   PSR ¶ 13.   In working with this DTO, Fuentes organized and coordinated the transportation of cocaine and money from

1

various countries throughout Central America. *Id.* In addition, Fuentes brokered cocaine purchases between sources of supply and the DTO. *Id.* It was reasonably foreseeable to Fuentes that during the course of the conspiracy, he and other members of the DTO brokered and organized the transportation of 2,000 kilograms of cocaine for ultimate importation into the United States. *Id.*

As part of his brokering role with the DTO, Fuentes would actively seek out cocaine for sale by sources of supply on behalf of Co-Conspirator #1. *Id.* Upon finding suitable sources of supply, Fuentes would seek to arrange transactions between the sources of supply and the DTO. *Id.* Fuentes regularly communicated with Co-Conspirator #1 and other members of the DTO, about cocaine for sale and attempted to arrange cocaine deals. *Id.* In exchange for his brokerage services, Co-Conspirator #1 authorized the payment of a commission to Fuentes on every kilogram of cocaine the DTO purchased. *Id.*

In approximately 2015, Fuentes coordinated the transportation of 300 kilograms of cocaine from a Central American Source to the DTO. *Id.* Fuentes arranged for the ground transportation of the cocaine from Nicaragua to Guatemala. *Id.* In exchange for his help coordinating and providing ground transportation, the DTO paid Fuentes a commission. *Id.*

As part of his transporter role with the DTO, Fuentes agreed with Co-Conspirator #1 to transport hundreds of kilograms of cocaine across Central America. *Id.* To effectuate these transports, Fuentes received information from Co-Conspirator #1 and other members of the DTO regarding the locations for the cocaine pick-up, the brands of cocaine to be transported, and the amount of cocaine to be transported. *Id.* In moving the cocaine, Fuentes used ground

transportation in the form of trucks with hidden compartments.  *Id.*  Fuentes received payment from the DTO for his transportation services.  *Id.*

In 2015 and 2016, Fuentes arranged for the sale and transport of multiple loads of cocaine on behalf of the DTO.  *Id.*  On the first load, Fuentes sold 41 kilograms of cocaine to the DTO in Guatemala.  *Id.*  As part of this transaction, Fuentes coordinated and delivered the 41 kilograms to the DTO.  *Id.*  On the second load, Fuentes sold 43 kilograms of cocaine to the DTO in Guatemala.  *Id.*  As part of this transaction, Fuentes coordinated and delivered the 43 kilograms to the DTO.  *Id.*  On the third load, Fuentes sold 40 kilograms of cocaine to the DTO in Guatemala.  *Id.*  As part of this transaction, Fuentes coordinated and delivered the 40 kilograms to the DTO.  *Id.*

In his role as bulk cash transporter for the DTO, Fuentes moved drug proceeds across Central America.  *Id.*  To effectuate these transports, Fuentes communicated with Co-Conspirator #1 and other members of the DTO, as to the movement of bulk cash derived from cocaine trafficking.  *Id.*  In moving the cash, Fuentes used ground transportation in the form of trucks with hidden compartments and received payment from the DTO for his transportation services.  *Id.*  On a single occasion, in 2015, Fuentes moved $1.5 million of drug proceeds from Guatemala to Costa Rica on behalf of the DTO.  *Id.*  In exchange, Fuentes received a payment of $150,000.  *Id.*

On February 5, 2019, Fuentes was charged in a one-count Indictment.  PSR ¶ 1.  The Indictment charged the defendant with Conspiracy to Distribute 5 Kilograms or More of Cocaine, Knowing, and Intending that it would be Unlawfully Imported into the United States, in violation of 21 U.S.C. §§ 963 and 959(a).  *Id.*  On July 4, 2019, Guatemalan authorities arrested

Fuentes in Guatemala and he was extradited to the United States on July 29, 2019.   PSR ¶ 7.

On November 8, 2019, the defendant entered a plea of guilty to count one of the Indictment, with the benefit of a written plea agreement.   PSR ¶ 2.   As part of the plea agreement, the parties agreed to the following: (a) pursuant to Section 2D1.1(c)(1) of the Sentencing Guidelines, relating to Drug Quantity, the defendant conspired to distribute or it was reasonably foreseeable to the defendant that his co-conspirators distributed 450 kilograms or more of cocaine knowing and intending that it would be unlawfully imported into the United States (Level 38); (b) the defendant has assisted the government in the investigation and prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, and thus the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level; (e) the United States will agree to recommend a sentence of no more than 210 months of imprisonment for the defendant.   PSR ¶ 4.   The Court accepted the defendant's plea and sentencing was set for July 1, 2020.

## II.        Acceptance of Responsibility

The United States moves to permit defendant to receive a third point for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), as defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the [United States] to avoid preparing for

trial and permitting the [United States] and the court to allocate their resources efficiently."

### III.    Motion for Upward Variance and Position on Sentencing and Argument

Based on the nature and circumstances of the defendant's conduct, seriousness of the defendant's conduct, the need to deter the defendant, and the need to protect the public from defendant's future criminal conduct, the United States asks the Court for a two-level upward variance.   By participating in a large scale international DTO that moved 2,000 kilograms of cocaine during the course of a three-year conspiracy, a significant sentence is warranted.   As a result, the United States recommends an upward variance to 210 months imprisonment.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process.   First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range."   *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).   In making this determination:

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

### A.     Nature and Circumstances of the Offenses

Over the course of several years, Fuentes knowingly participated in a large-scale international drug trafficking conspiracy that transported thousands of kilograms of cocaine from Central America to the United States.   Reporting directly to the heads of the DTO, Co-Conspirator #1 and Co-Conspirator #2, Fuentes served a trusted cocaine trafficker for the organization.   Directly related to Fuentes's participation in the conspiracy, the DTO successfully moved over 2,000 kilograms of cocaine and $1.5 million of bulk cash during the relevant period.

As an outside contractor for the DTO, Fuentes served in a variety of roles.   These roles included transporting cocaine, moving bulk currency, and brokering cocaine purchases and sales. With extensive contacts throughout Central and South America, Fuentes's knowledge of the drug trade made him an important asset to the DTO.   Trusted with large amounts of cocaine and cash, Fuentes provided a unique ability to move DTO assets successfully without fear of theft. Fuentes involvement with the DTO over the course of several years, proved his worth as an individual able to obtain cocaine and move it thousands of miles without detection.

Therefore, the nature and circumstances in this case warrant an upward variant sentence of 210 months for Fuentes.

### B.     History and Characteristics of the Defendant

The defendant is 43 years old, with no prior convictions in the United States, resulting in a Criminal History Category I.   PSR ¶¶ 31-34.   Based on this lack of criminal history, the defendant meets the criteria set forth in U.S.S.G. § 5C1.2, and therefore receives a two level decrease to this total offense level.   PSR ¶ 22.   Currently, the United States has a pending request to the Guatemalan government for a criminal record check for Fuentes.

6

The defendant was born in Guatemala and has lived there his entire life.   PSR ¶ 39.   The defendant grew up in an affluent Guatemalan family, in which his father owned a plastic factory and shop.   PSR ¶ 41.   According to Fuentes, he resided "in one of the nicest sections of Guatemala City' in a 20 room house, with 12 bedrooms, and five live in maids.   *Id.*

The defendant is married and has three children, ages 11, 5, and 2.   PSR ¶ 43.   The defendant reports high blood pressure and diverticulitis.   PSR ¶ 45.   The defendant completed six years of primary school and five years of secondary school in Guatemala at 17 years of age. PSR ¶ 48.   The defendant has a limited history of substance abuse, to include marijuana, cocaine use, yet no mental health issues.   PSR ¶¶ 46-47.   From 2005, Fuentes worked in a variety of jobs to include selling clothes, selling vehicles, selling helicopters, and assisting his wife's clothing business.   PSR ¶ 49-52.

**C.     A Sentence Within the Guidelines Serves the Factors of § 3553**

     1.     <u>Seriousness of the Offense; Provide Adequate Punishment</u>

This factor supports an upward variance and significant sentence.    The defendant, a Guatemalan drug trafficker, is responsible for assisting in the operation of a large scale international DTO.    By running a cocaine transportation network, brokering cocaine transactions, and buying/selling cocaine, Fuentes was a vital and trusted member of the DTO. By assisting in this conspiracy for several years, Fuentes's actions led to the transportation of over 2,000 kilograms of cocaine in Central America, with the intent to import this cocaine into the United States.    The sheer magnitude of the cocaine transported as part of this conspiracy warrants a two-level upward variance and 210 month sentence.

     2.     <u>Need to Deter Future Criminal Conduct</u>

7

An upward variance will ensure that the defendant fully appreciates the gravity of his conduct in this case.   In addition, a sentence of 210 months will also significantly deter future criminal conduct by others, to include leaders within the cocaine trade, who are interested in importing cocaine to the United States.   This case should send a clear signal to all drug traffickers in managerial roles that we will not tolerate sophisticated efforts to transport cocaine throughout Central America destined for the United States.

    3.   <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

To be sure, the sentence imposed on Fuentes should take into consideration the need to protect the public.   Due to his involvement in a conspiracy to import over 2,000 kilograms of cocaine into the United States, Fuentes's actions have severely harmed the public.   Fuentes profited, and helped others profit, by helping move millions of doses of cocaine from their source of supply to countless end users.   The defendant also moved over $1 million dollars of drug proceeds—money that was likely reinvested into the cocaine business.   Without Fuentes's efforts or participation in this cocaine trafficking conspiracy, the DTO would not have been as efficient in spreading its cocaine into the United States.

As this Court is well aware, cocaine trafficking is an extremely violent business that has led to the deaths of thousands of individuals over the last several decades.   Although the United States has no direct evidence tying Fuentes to in violent acts, the DTO he associated with did engage in violence.   Coupled with this violence on the trafficking side, is the highly addictive nature of cocaine that has not only ruined thousands of people's lives but in some cases lead to their death.   Cocaine traffickers like Fuentes should be held responsible for these consequences.

Therefore, an upward variance and a sentence of 210 months is appropriate to protect the public from the defendant's future criminal behavior.

### 4.   Need to Avoid Unwarranted Disparities

The defendant's activities fall within a range of conduct not typically seen by this Court. Based on the enormous drug weight involved in the conspiracy and the defendant's role within the DTO, Fuentes's case is certainly unique.   However, in comparison to other members of the conspiracy, a 210-month sentence is appropriate taking into consideration that other comparable co-conspirators, Co-Conspirator #3 and Co-Conspirator #4, received the same sentence.   In comparison, the leaders of the DTO, received significantly greater sentences, Co-Conspirator #1 a 282 month sentence and Co-Conspirator #2 a 300 month sentence.

Therefore, an upward variant sentence of 210 months is appropriate in this case to avoid unwarranted disparities between his sentence and the sentence of a like-positioned defendant.

### IV.    Conclusion

For the reasons stated above, the United States submits that a two-level upward variance and a sentence of 210 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

_____/s/_____
Erik S. Siebert
Peter S. Duffey
Heather Mansfield
Assistant United States Attorneys
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Email: erik.s.siebert@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of June 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Amy Austin, Esq.
> 301 Southlake Blvd., Suite 102
> North Chesterfield, VA 23236

_____/s/_____
Erik S. Siebert
Peter S. Duffey
Heather Mansfield
Assistant United States Attorneys
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: erik.s.siebert@usdoj.gov
